# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

TIMOTHY E. HATCHETT      *

    Plaintiff      *

    v      *      Civil Action No. DKC-11-1969

WARDEN      *

    Defendant      *

    ***

## MEMORANDUM OPINION

Pending are Defendant's Response to Show Cause (ECF No. 3) and Plaintiff's Reply thereto (ECF No. 5). Additionally, Plaintiff has filed an Amended Request for Injunctive Relief. ECF No. 6.

## Background

Plaintiff alleged in the Complaint that on July 11, 2011, items confiscated from his cell, which included legal materials, were scheduled to be destroyed. ECF No. 1. He also indicated that some of the legal materials belonged to another inmate and alleged that when the officers were finished searching his cell "they confiscated all [his] books, legal, religion, general, encyclopedia, names, soap detergent, [and] bowl." *Id*. at p. 3. He claims the officers brought back a "confiscation paper" for him to sign which indicated the property had been destroyed. *Id*. Plaintiff claims that when the officer told him he would have to either send some of his property to another address or have it destroyed he told the officer he would not agree to either option. *Id*. at p. 2. This court issued an Order to Show Cause on July 27, 2011. ECF No. 2.

In the Response to Show Cause, Defendant states that the items confiscated from Plaintiff included portable video game devices, detergent, a bowl and paperwork that exceeded the 1.5

cubic feet limit for books and personal papers. ECF No. 3 at Ex. 2. When the items were being removed, Plaintiff chose to keep legal materials in his cell and to discard the books which exceeded the allowable space limit. *Id*. at Ex. 4. Plaintiff was provided with a Notice of Confiscation and Inmate Personal Property Disposition form when his property was removed. The form allows for the confiscation to be contested and for confiscated property to be either mailed to an outside address, donated, or destroyed. *Id*. at Ex. 2. The form presented to Plaintiff and bearing his signature indicated the confiscation would not be contested and that the property would be destroyed. *Id*. Accordingly, the property was destroyed.

In his Reply, Plaintiff alleges he was removed from the area of his cell during the search because Sgt. Cross and Officer Bowers became irate when he told them "I'm not sending anything home because I uses (sic) everything and I'm not destroying it either, for I will file an ARP grievance." ECF No. 5 at p. 1. He claims that a box full of property was placed next to the holding cell where he was taken and he was told to sign the confiscation form "in both places." Plaintiff states he only signed in one place because he wanted his property held for disposition.[1] Although Sgt. Cross indicated he would need to write on the form that the property should be held, Plaintiff states when he received the form it was checked that the property would be destroyed.

Plaintiff's administrative remedy complaint was denied based on his voluntary signature on the confiscation form indicating the property would be destroyed. ECF No. 5 at Ex. 3 (attachment 2). Plaintiff claims that the property was not destroyed right away, but was destroyed on or after July 26, 2011, and claims an inmate worker checked on the status of his

---

[1] The form has a space for an inmate's signature to indicate waiver of a right to a hearing on the issue of forfeiture which was left blank. In the same section there is an indication that the items were to be destroyed. While Plaintiff's signature is underneath the destroy option, that part of the form is not filled out in Plaintiff's handwriting. ECF No. 3 at Ex. 2. There is nowhere on the form to indicate an inmate's desire to contest the forfeiture of his property and request a hearing on the matter.

2

property for him every day. *Id*. at p. 2. He asserts the destruction of his property violated this court's Order and that Division of Correction regulations were violated because the property was destroyed by "non-property personnel, while said property should have been handled pursuant to DCD 220-004 by qualified personnel without retaliatory motive." ECF No. 5 at p. 4.

Plaintiff's Amendment to Injunctive Relief asserts that on September 1, 2011, he spoke to Lt. Llewellyn about going to work and the library and Llewellyn responded that Plaintiff would be moving that day. ECF No. 6. Upon his return from a dentist appointment Plaintiff was moved to another housing unit and classified as being affiliated with a prison gang. He asserts these actions were retaliatory and racially discriminatory. The retaliation is alleged to have occurred in response to Plaintiff mailing his Reply in this case on August 29, 2011. His basis for claiming racial discrimination is that only black inmates were identified as gang affiliated after a security incident occurred on August 29, 2011. He claims no white inmates were moved from their housing unit, removed from their job, or identified as a threat to security. *Id*.

## Standard of Review

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

The property at issue has been destroyed. While Plaintiff refers to the property in general terms, the listed items of property on the confiscation sheet is more specific. Defendant provides that the "paperwork" that was destroyed consisted of books which Plaintiff opted to forfeit. Plaintiff's signature on the form indicating the property was to be destroyed removed all doubt as to the disposition of the property. There is no action to enjoin in this case; therefore, the request for injunctive relief will be denied.

The question remains whether the case is moot. "The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *United States v. Hardy*, 545 F. 3d 280, 283 (4th Cir. 2008) (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990). The parties must continue to have a "personal stake in the outcome" of the lawsuit. *Id.* at 478 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983)). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " *Spencer*, 523 U.S. at 7 (quoting *Lewis,* 494 U.S. at 477).

## Analysis

Plaintiff argues he is entitled to damages for the loss of his property and the violation of his constitutional rights with respect to his property.[2] In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation

---

[2] Plaintiff's assertion that the property was destroyed in contravention of this court's Order is not supported by the evidence. The Order to Show Cause was issued on the date Plaintiff alleges the property was destroyed; thus, the destruction of the property was not calculated to thwart the purpose of this court's order.

remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[3] *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[4] With respect to the non-legal property confiscated and destroyed, Plaintiff has no due process claim.

To the extent any of the property confiscated from Plaintiff's cell was "legal material," his claim fares no better. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), *quoting Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the

---

[3] Plaintiff may avail himself of remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office.

[4] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post-deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349.

Although Plaintiff references in general terms an inability to file cases in court, he does not state what cases he is prevented from pursuing or how the materials taken have impacted his ability to pursue a viable claim challenging his conviction or the conditions of his confinement. Plaintiff includes in his list of items destroyed a transcript belonging to another inmate. ECF No. 1. Even if the destruction of that transcript has harmed the other inmate, Plaintiff has no standing to assert a cause of action on this inmate's behalf.

In order to prevail on his claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*American Civil Liberties Union of Maryland, Inc. v. Wicomico County*, Md. 999 F.2d 780, 785 (4th Cir. 1993). "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds

directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

Plaintiff readily admits that his move from one housing unit to another was in response to an incident that required the prison to go on lockdown. ECF No. 6. With respect to serious security matters, the expertise of prison officials must be given its due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). This court is mindful of the rising violence in Maryland's prisons, most of which can be traced back to gang activities.[5] In light of that legitimate security concern, the State's interest in maintaining safety far outweighs Plaintiff's interest in maintaining a prison housing and job assignment. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976) (prisoners do not have a constitutional right to access programs or to demand to be housed in one prison verses another). Plaintiff's amended request for injunctive relief shall be denied.

The injunctive relief sought shall be denied and the Complaint shall be dismissed by separate Order which follows.

Date: October 18, 2011          /s/
                                DEBORAH K. CHASANOW
                                United States District Judge

---

[5] *See* Justin Fenton, *Thirty-five Charged with Maryland Crime Spree*, Baltimore Sun, October 13, 2011, http://articles.baltimoresun.com/2011-10-13/news/bs-md-ci-state-bloods-indictment-20111013_1_gang-members-gang-activity-bloods.